UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        v.                              )        Criminal No. 04-0358 (PLF)
                                        )
BRITTIAN PERRY DAY                      )
                                        )
        Defendant.                      )
_____)

OPINION

        This matter is before the Court on the defendant Brittian Perry Day's motion for

judgment of acquittal with respect to certain forfeiture allegations that appear in the superseding

indictment against him and on the government's related motion for entry of a money judgment

and preliminary order of forfeiture.

I. BACKGROUND

        On August 4, 2004, a federal grand jury returned an indictment against Brittian

Perry Day, charging that, over a ten year period from March 1994 to August 2004, he had

engaged in a scheme to defraud  numerous employee benefit plans and one charitable

organization in connection with the sale of $1.5 million worth of insurance policies.  A

superseding indictment was returned on August 27, 2004.  The superseding indictment included

six counts of mail fraud under 18 U.S.C. § 1341 (Counts 1 through 6), ten counts of wire fraud

under 18 U.S.C. § 1343 (Counts 7 through 16), and five counts of theft or embezzlement from

employee benefit plans under 18 U.S.C. § 664 (Counts 17 through 21).[1]  In addition to the

substantive criminal charges, the superseding indictment also contained (1) forfeiture allegations

pursuant to 18 U.S.C. § 982(a)(2)(A) and 18 U.S.C. § 982(b)(1) in connection with the mail and

wire fraud charges (paragraphs 35-37), and (2) forfeiture allegations pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461(c) in connection with the charges of theft or embezzlement

from employee benefit plans (paragraphs 38-40).  Through the superseding indictment, the

government originally sought forfeiture of Mr. Day's primary residence in Washington, D.C.,

two beach homes in Rehoboth Beach, Delaware, and a Mercedes-Benz automobile.  The

government also sought entry of a money judgment against Mr. Day in the amount of $1.5

million, which, according to paragraphs 36 and 39 of the superseding indictment, "represents the

sum of money equal to the total amount of money constituting, or derived from, proceeds" of

his crimes.

A retyped indictment was prepared, excluding the forfeiture allegations, and

submitted to the jury so it could consider the substantive criminal counts without being confused

by the existence of – and the different burden of proof pertaining to – the forfeiture allegations.

On April 20, 2005, the jury returned its unanimous verdict finding Mr. Day guilty on all counts.

In preparation for submitting the forfeiture allegations to the jury, the government retyped the

indictment again, limiting its request for forfeiture to a money judgment.  According to the

government, it had made "a tactical choice to streamline the proceedings by pursuing only the

money judgment."  Government's Opposition to Defendant's Motion for Judgment of Acquittal

---

[1]        The superseding indictment also included one count of fraud in the first degree
under D.C. Code §§ 22-3221 and 22-3222 (Count 22).

on Counts 36 Through 39 ("Gov't Opp'n") at 2.  Thus, the government's forfeiture allegations

under 18 U.S.C. § 982(a)(2)(A), relating to Counts 1 through 16 (mail and wire fraud), now read

as follows:

> As a result of the offenses alleged in Counts One through
> Sixteen of this Indictment, the defendant in this Indictment shall
> forfeit to the United States any property constituting, or derived from,
> proceeds obtained, directly or indirectly, as a result of mail fraud, in
> violation of Title 18, United States Code, Section 1341, and/or wire
> fraud, in violation of Title 18, United States Code, Section 1343
> including, but not limited to:
>
> (a)      Money Judgment:
>
> $1,500,000.00, which represents the sum of money equal to the total
> amount of money constituting, or derived from, proceeds obtained,
> directly or indirectly, as a result of mail fraud, in violation of 18
> U.S.C. § 1341, and/or wire fraud, in violation of 18 U.S.C. § 1343.
> Fed. R. Crim. P. 32.2(b)(1).

Retyped Superseding Indictment at ¶ 36.  The forfeiture allegations under 28 U.S.C. § 2461(c)

and 18 U.S.C. § 981(a)(1)(C), relating to Counts 17 through 21 (theft or embezzlement from

employee benefit plans), now read as follows:

> As a result of the offenses alleged in Counts Seventeen through
> Twenty-One of this Indictment, the defendant in this Indictment shall
> forfeit to the United States any property constituting, or derived from,
> proceeds traceable to embezzlement from pension and welfare funds,
> in violation of Title 18, United States Code, Section 664 including, but
> not limited to:
>
> (a)      Money Judgment:
>
> $1,500,000.00, which represents the sum of money equal to the total
> amount of money constituting, or derived from, proceeds traceable to
> embezzlement from pension and welfare funds, in violation of 18
> U.S.C. § 664.  Fed. R. Crim. P. 32.2(b)(1).

Retyped Superseding Indictment at ¶ 39.

Thereafter, Mr. Day knowingly and voluntarily waived his right to have the jury determine whether the government was entitled to the forfeiture sought and committed the forfeiture issues to the Court for all necessary findings of fact and conclusions of law.  Because the government had decided that, in lieu of seeking the forfeiture of specific property, it intended only to pursue a $1.5 million money judgment against Mr. Day, the government asked the Court to enter the money judgment and then to order the forfeiture of Mr. Day's primary residence as a substitute asset under 18 U.S.C. § 853(p) in satisfaction of the money judgment.[2]

Counsel for Mr. Day did not challenge, as a factual matter, the total amount of proceeds sought by the government in forfeiture and, in fact, orally stipulated that the government could produce evidence to support its claim that Mr. Day had received $1.5 million in proceeds from his criminal activities.[3]  Defendant's counsel instead argued that there is no basis in criminal forfeiture law for the government to obtain a personal money judgment against Mr. Day and that, in any event, the forfeiture statutes cited in the superseding indictment do not apply to the offenses of which Mr. Day was convicted.  The Court heard argument from the

---

[2]    It appears that Mr. Day's primary residence is the only specific property identified in the superseding indictment as forfeitable that the defendant has not forfeited already.  The government has represented that, following Mr. Day's indictment, it completed administrative forfeiture proceedings against the two beach homes and the Mercedes-Benz automobile, which yielded a total of $122,681.63.  See Government's Motion for Entry of a Money Judgment and Preliminary Order of Forfeiture at ¶ 2.  It also appears that Mr. Day acquired his primary residence several years before the scheme alleged in the superseding indictment commenced.

[3]    Although the Court requested the parties to reduce the stipulation to writing, to date no written stipulation has been filed.  Subsequently, counsel for Mr. Day has represented the stipulation as follows: "[I]f called to testify in the forfeiture proceeding, the FBI Special Agent who prepared and authenticated various summary charts that had been admitted in evidence during his trial testimony, would produce charts and testimony to support restitutional claims of approximately $1.5 million."  Defendant's Memorandum in Aid of Sentencing at 2.

parties on two occasions and set a schedule for briefing on the legal issues raised during the

hearings.

## II. DISCUSSION

### A. Defendant's Motion for Judgment of Acquittal

On August 5, 2005, pursuant to Rule 29 of the Federal Rules of Criminal

Procedure, counsel for Mr. Day filed a motion styled Defendant's Motion for Judgment of

Acquittal on Counts 36 and 39 of the Indictment.[4]  The motion can be characterized as presenting

arguments that the forfeiture allegations in the superseding indictment fail to invest the Court

with the authority to enter an order of forfeiture against Mr. Day.[5]  As counsel for Mr. Day puts

it, there are two issues here:

> The first is whether a money judgment – typically, a civil remedy –
> is available under authority of the forfeiture statutes following
> criminal convictions in mail and wire fraud or embezzlement cases,
> and the second is whether the forfeiture statutes under which the
> United States is proceeding are applicable to the convictions in this
> case.

Defendant's Memorandum of Points and Authorities in Support of Motion for Judgment of

Acquittal on Counts 36 and 39 of the Indictment at 2.

---

[4]    As the government points out and as noted above in this Opinion, the superseding
indictment contains twenty-two criminal counts as well as a number of forfeiture allegations,
certain of which appear at paragraphs 36 and 39.  It does not contain thirty-nine counts.

[5]    The filing of this motion was inexcusably late.  After counsel for Mr. Day missed
a first filing deadline, the Court ordered counsel to file any forfeiture-related pleadings by July
29, 2005.  Mr. Day's motion and supporting memorandum, however, were not filed until August
5, 2005 – a full week after the second filing deadline and more than three months after the
government had indicated that it was prepared to initiate forfeiture proceedings.

In opposition, the government first contends that Mr. Day's motion is procedurally barred. Because forfeiture is part of Mr. Day's sentence rather than an independent offense, its argument goes, there simply is no basis under Rule 29 for Mr. Day to move for judgment of acquittal with respect to the forfeiture allegations levied against him. See Gov't Opp'n at 4.[6] According to the government, the only procedural posture wherein Mr. Day could attack the forfeiture allegations in the superseding indictment is through a motion to dismiss under Rule 12(b)(3) of the Federal Rules of Criminal Procedure, but Mr. Day long ago waived his right to present such a motion. See id. at 4-7 (Rule 12(b)(3) requires motions "alleging a defect in instituting the prosecution" or alleging "a defect in the indictment or information" to be made pre-trial).

Proceeding to the merits of Mr. Day's claims, the government argues that, under the relevant statutory scheme – which even it describes as "labyrinthine" – all of a convicted person's property derived from an offense listed in 18 U.S.C. § 1961(1) is subject to criminal forfeiture by the United States. See Gov't Opp'n at 7-8. Because mail fraud, wire fraud, and theft or embezzlement from an employee benefit plan are among the listed offenses, the government's argument continues, it necessarily follows that the forfeiture statutes cited in the superseding indictment apply to Mr. Day. See id.

Regarding Mr. Day's position that the Court lacks authority to enter a money judgment against him, the government concedes, as it must, that the term "money judgment" nowhere appears in the applicable forfeiture statutes. See Gov't Opp'n at 8. The government

---

[6]     Although the Court denied Mr. Day's motion seeking leave to late file his brief on August 9, 2005, the Court subsequently asked the government to respond in writing on the merits to Mr. Day's legal arguments, which the government promptly did.

contends, however, that the entry of "forfeiture money judgments" as a means to effectuate the government's statutory right to collect a forfeited sum of money from a criminal defendant is firmly established in decisional law.  See id. at 8, 10-12 (citing numerous cases that either explicitly or implicitly approve of the entry of forfeiture money judgments).  It further states: "Forfeiture is mandatory in a criminal case.  If a defendant is convicted of a criminal offense, the district court has no choice but to order the defendant to forfeit the proceeds of the crime."  Id. at 8-9 (citing United States v. Monsanto, 491 U.S. 600, 606 (1989)).  The government submits that the concept was so well-recognized by 1999 that the Advisory Committee on the Federal Rules of Criminal Procedure wrote procedures for dealing with money judgments into Rule 32.2 when it reorganized the rules relating to criminal forfeiture.  See Gov't Opp'n at 11.

The Court agrees with the government that Mr. Day procedurally is barred from obtaining relief under Rule 29.  A motion for judgment of acquittal is predicated upon the existence of an offense for which the evidence is insufficient to sustain a conviction.  See Fed. R. Crim. P. 29(a).  In other words, a Rule 29 movant must be charged with an offense and be at risk of a conviction.  Criminal forfeiture is not an independent substantive offense, nor is it even an element of an offense.  It is instead "an aspect of punishment imposed following conviction of a substantive criminal offense."  Libretti v. United States, 516 U.S. 29, 38-39 (1995); see United States v. DeFries, 129 F.3d 1293, 1312-1313 (D.C. Cir. 1997); United States v. Ferrario-Pozzi, 368 F.3d 5, 8 (1st Cir. 2004).  A criminal defendant like Mr. Day therefore cannot be convicted on forfeiture allegations.  As a result, there is no basis under Rule 29 for Mr. Day to move for judgment of acquittal concerning the forfeiture allegations set forth in the superseding indictment.

On the other hand, the Court is not convinced that Mr. Day is precluded from raising his substantive arguments under Rule 12 of the Federal Rules of Criminal Procedure.  To the extent that Mr. Day is arguing that the superseding indictment fails to invoke the Court's jurisdiction, the Court  may entertain his claims "at any time while the case is pending."  Fed. R. Crim. P. 12(b)(3)(B); see also United States v. Pheaster, 544 F.2d 353, 361 (9th Cir. 1976) ("fundamental" defects in an indictment can be raised at any time).  At this stage, however, the Court need not construe Mr. Day's filing as a Rule 12 motion in order to reach the merits of his legal claims.  That is because the issues are now squarely before the Court in connection with the government's motion for entry of a money judgment and preliminary order of forfeiture, filed on December 21, 2005.  Accordingly, on procedural grounds alone, the defendant's motion for judgment of acquittal is hereby denied, and the Court now will proceed – with the benefit of the parties' briefs in connection with the defendant's motion for judgment of acquittal – to a determination on the government's motion.

### B. Government's Motion for Entry of Money Judgment and Preliminary Order of Forfeiture

In its motion for entry of a money judgment and preliminary order of forfeiture, the government first asks the Court to enter a money judgment against Mr. Day for $1.5 million, which the government submits is the established amount of the proceeds Mr. Day received from his criminal offenses, based upon the defendant's oral stipulation and the evidence set forth at trial.  See Government's Motion for Entry of Money Judgment and Preliminary Order of Forfeiture ("Gov't Mot.") at ¶¶ 4, 8.  Because Mr. Day "appears to have no other property available to satisfy the money judgment," the government next asks the Court to order forfeiture

8

of Mr. Day's primary residence in Washington, D.C., as a substitute asset, "to partially satisfy the money judgment entered against him."  <u>Id</u>. at ¶ 9; <u>see also</u> <u>id</u>. at ¶ 10.

   In ruling on the government's motion, the Court first must determine, as a general matter, whether the forfeiture statutes cited in the superseding indictment and invoked by the government authorize the Court to order forfeiture as a part of Mr. Day's sentence and, if so, whether a money judgment is appropriate.

### 1. Mail and Wire Fraud

   The superseding indictment alleges that the proceeds of Mr. Day's mail and wire fraud violations, and all property derived therefrom, are subject to forfeiture under 18 U.S.C. § 982(a)(2)(A), a provision of the criminal forfeiture statute.  <u>See</u> Superseding Indictment at ¶¶ 35-37; Retyped Superseding Indictment at ¶¶ 35-36.  As Mr. Day argues, however, and as the government concedes, Section 982(a)(2)(A), by its terms, applies only to mail and wire fraud convictions "affecting a financial institution."  Because there is no contention that the defendant's crimes affected a financial institution, as that term statutorily is defined, <u>see</u> 18 U.S.C. § 20, the Court agrees with Mr. Day that Section 982(a)(2)(A) does not authorize the Court to order forfeiture based on the mail and wire fraud convictions in this case.

   The government instead argues that the forfeiture allegations set forth in paragraphs 36 and 37 of the superseding indictment (paragraph 36 of the retyped superseding indictment) provide sufficient notice to Mr. Day to identify the fact that the government seeks forfeiture of property specified in those allegations.  <u>See</u> Gov't Opp'n at 7 (Fed. R. Crim. P. 7(c)(2) endorses mere notice pleading of forfeiture allegations).  According to the government,

the Court is authorized to order Mr. Day to forfeit the proceeds of his mail and wire fraud violations under 18 U.S.C. § 981(a)(1)(C), a provision of the civil forfeiture statute that applies to criminal cases through 28 U.S.C. § 2461(c).  Inasmuch as the superseding indictment explicitly references Section 981(a)(1)(C) as the statutory basis for forfeiture in connection with the charges of theft or embezzlement from employee benefit plans, and because Section 981(a)(1)(C) also applies to mail and wire fraud violations, the government asserts that its omission from the superseding indictment's mail and wire fraud forfeiture allegations represents nothing more than a harmless citation error.  See Gov't Opp'n at 7, 8 n.4 (Fed. R. Crim. P. 7(c)(3) permits citation errors that do not mislead or prejudice a defendant).  The Court does not believe that Mr. Day either was misled or prejudiced by the government's asserted error in citation and finds that he adequately was put on notice of the forfeiture allegations.  That is irrelevant, however, because the Court concludes that Section 981(a)(1)(C), like Section 982(a)(2)(A), does not authorize the Court to order Mr. Day to forfeit the proceeds of his mail and wire fraud convictions.

According to the government, 28 U.S.C. § 2461(c) requires the Court to order criminal forfeiture where a civil forfeiture is authorized, and Section 981(a)(1)(C) in turn supplies the necessary authorization in this case.  Section 981(a)(1)(C) provides for civil forfeiture of any real or personal property that "constitutes or is derived from proceeds traceable to" an offense constituting "specified unlawful activity," as that term is defined in 18 U.S.C. § 1956(c)(7).  Section 1956(c)(7) defines "specified unlawful activity" as, among other things, "any act or activity constituting an offense listed in section 1961(1) [of Title 18]."  Section 1961(1) is part of the RICO statute, and it provides, among other things, that mail and wire fraud

are offenses for the purposes RICO.[7]  The government argues that this statutory scheme requires the Court to order Mr. Day to forfeit the proceeds of his mail and wire fraud convictions.

The Court disagrees.  The plain language of 28 U.S.C. § 2461(c) permits the government to seek criminal forfeiture of the property of a convicted person that would be subject to civil forfeiture, provided that "no specific statutory provision is made for criminal forfeiture upon conviction."[8]  Here, 18 U.S.C. § 982(a)(2)(A) is just such a specific statutory provision, authorizing criminal forfeiture upon conviction of mail and wire fraud.  By its terms, therefore, Section 2461(c) does not authorize criminal forfeiture of mail and wire fraud proceeds.  Other courts have reached the same conclusion.  See United States v. Croce,  345 F. Supp. 2d 492, 496 (E.D. Pa. 2004) ("Croce II") (because 18 U.S.C. § 982(a)(2)(A) is "a specific statutory provision made for criminal forfeiture upon conviction of mail fraud," 28 U.S.C. § 2461(c) "does not authorize us to order criminal forfeiture of mail fraud proceeds"); United States v. Grass, No. 02-146, 2002 U.S. Dist. LEXIS 26045, at *15-17 (M.D. Pa. Dec. 17, 2002) (same regarding wire fraud); cf. United States v. Thompson, No. 02-CR-116, 2002 WL 31667859, at *2 (N.D.N.Y.

---

[7]      As is discussed below, theft or embezzlement from an employee benefit plan also is among the listed offenses.

[8]      The full text of Section 2461(c) provides:

> If a forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the Government may include the forfeiture in the indictment or information in accordance with the Federal Rules of Criminal Procedure, and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in [21 U.S.C. § 853], other than subsection (d) of that section.

Nov. 26, 2002) (similar reasoning regarding narcotics conspiracy and possession with intent to distribute marijuana); but see United States v. Schlesinger, 396 F. Supp. 2d 267, 275 (E.D.N.Y. 2005) ("[U]nder the plain terms of [28 U.S.C. § 2461(c)], criminal forfeiture for mail and wire fraud is permitted.").

It nevertheless could be argued that, because Section 982(a)(2)(A) provides for criminal forfeiture only where the mail or wire fraud "affect[s] a financial institution," the more general language of Section 2461(c) governs where the mail or wire fraud does not affect a financial institution.  In expressly rejecting this argument, the court in Croce II reasoned:

> [W]e read § 2461(c) as requiring criminal forfeiture only in those cases where Congress had not specifically considered whether, and to what extent, to authorize criminal forfeiture.  In § 982(a)(2)(A), Congress clearly considered the circumstances in which it intended to include criminal forfeiture among a convict's punishments for mail fraud, and it concluded that criminal forfeiture was only appropriate when the mail fraud affected a financial institution . . . .  It seems highly unlikely that, in passing the broad language of § 2461(c), Congress intended to silently remove the limitations on criminal forfeiture in mail fraud cases that it had carefully inserted into § 982(a)(2)(A).

Croce II, 345 F. Supp. 2d at 496 n.9; see also United States v. Grass, No. 02-146, 2002 U.S. Dist. LEXIS 26045, at *17 (18 U.S.C. § 981(a)(1)(C) is "unavailable to [the government] as a means for avoiding the requirement that the wire fraud affect a financial institution"); but see United States v. Schlesinger, 396 F. Supp. 2d at 275-278 (28 U.S.C. § 2461(c) authorizes criminal forfeiture under 18 U.S.C. § 981 for mail and wire fraud not affecting a financial institution). Persuaded by the reasoning of the court in Croce II, and in light of the Section 2461(c)'s express, limiting language, the Court concludes that it is without authority to order Mr. Day to forfeit the proceeds of his mail and wire fraud convictions or any property derived from such proceeds.

12

2. Theft or Embezzlement from an Employee Benefit Plan

The proceeds of Mr. Day's convictions for theft or embezzlement from an employee benefit plan (18 U.S.C. § 664) are an entirely different matter.  First of all, the forfeiture allegations in the superseding indictment relating to the defendant's Section 664 violations do not implicate any Rule 7(c) issues; the superseding indictment expressly references the statutes – 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – under which the government is seeking forfeiture of these particular proceeds.  See Superseding Indictment at ¶¶ 38-40; Retyped Superceding Indictment at ¶¶ 38-39; Gov't Mot. at ¶ 4.  Applying the statutory scheme, one sees that – like mail and wire fraud – theft or embezzlement from employee benefit plans under 18 U.S.C. § 664 constitutes an offense for the purposes of 18 U.S.C. § 1961(1), and thus constitutes a "specified unlawful activity" under 18 U.S.C. § 1956(7), thereby subjecting the proceeds of such an offense to civil forfeiture under Section 981(a)(1)(C).  But unlike mail and wire fraud, there is no specific federal statute providing for the criminal forfeiture of proceeds of Section 664 violations.  By operation of Section 2461(c), therefore, the Court, in imposing a sentence on Mr. Day for his convictions on Counts 17 through 21, is authorized to order the forfeiture of the proceeds and any property derived from the proceeds of these Section 664 violations.  Cf. Croce II, 345 F. Supp. 2d at 496 (reaching same conclusion with respect to proceeds of interstate transportation of money taken by fraud (18 U.S.C. § 2314)).

The analysis does not end there, however.  Even though the Court is authorized to order the forfeiture of proceeds of Mr. Day's theft or embezzlement from employee benefit plans, it could not order him to forfeit any proceeds of such violations (if any) that occurred before

13

April 25, 2000 because, as the court explained in Croce II, "that is the date when proceeds of 'specified unlawful activity' became subject to criminal forfeiture." Croce II, 345 F. Supp. 2d at 497 (citing Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202). In this case, unlike the situation presented in Croce II, however, the effective date of the statute presents no problems. The superseding indictment charges Mr. Day in Counts 17 through 21 with five separate acts of embezzlement, all of which took place after April 25, 2000. And, unlike mail and wire fraud, where the gravamen of the charge is the scheme or artifice to defraud – which, in this case covered a ten year period – and not the specific mailing or use of the wires, the gravamen of a Section 664 charge is the individual act of theft, embezzlement or conversion.[9] Thus, the Court is authorized, under 18 U.S.C. § 981(a)(1)(C), to order Mr. Day to forfeit the proceeds of all of his Section 664 violations. Adding up the amounts alleged in Counts 17 through 21 on which Mr. Day was convicted, it is clear that he received $39,123.67 in proceeds traceable to those offenses.

To summarize, for the reasons stated, the Court concludes that it is not authorized to order Mr. Day to forfeit the proceeds and any property derived from the proceeds of his mail and wire fraud convictions, regardless of when those crimes occurred. The Court also concludes that it is authorized to order Mr. Day to forfeit the proceeds and any property derived from the proceeds of his convictions of theft or embezzlement from employee benefit plans. From these conclusions – even before addressing the issue of whether the Court is authorized to enter a money judgment against Mr. Day – it is apparent that the government is not entitled to a money

---

[9]     This distinction is clear from the relevant statutes, as reflected in the instructions given to the jury in this case.

judgment for $1.5 million.  That is because the $1.5 million sought by the government includes

the proceeds of Mr. Day's mail and wire fraud convictions, which are not subject to criminal

forfeiture.  Furthermore, based upon the conclusions stated herein and the charges set forth in

Counts 17 through 21 of the superseding indictment, Mr. Day received only $39,123.67 in

proceeds that are subject to criminal forfeiture.

   The Court now will determine whether, on the state of the record before it and

under applicable law and procedure, the government is entitled to a money judgment for

$39,123.67 or to the forfeiture of Mr. Day's primary residence as substitute property.

### 3. Money Judgment

   By reason of his Section 664 convictions, the applicable forfeiture statutes require

the Court, in imposing a sentence on Mr. Day, to order the forfeiture of "[a]ny property, real or

personal, which constitutes or is derived from proceeds traceable to" his offenses.  18 U.S.C.

§ 981(a)(1)(C).  In addition to such directly forfeitable property, the applicable statutory

framework also subjects "substitute property" up to the value of directly forfeitable property to

forfeiture if, "as a result of any act or omission of the defendant," the directly forfeitable

property:

> (A) cannot be located upon the exercise of due diligence;
> (B) has been transferred or sold to, or deposited with, a third party;
> (C) has been placed beyond the jurisdiction of the court;
> (D) has been substantially diminished in value; or
> (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p); see also 28 U.S.C. § 2461(c) (providing that "the court shall order the

forfeiture of the property in accordance with the procedures set forth in [21 U.S.C. § 853], other than subsection (d) of that section").

In short, the Court is required to order the forfeiture of Mr. Day's directly forfeitable property, and, under certain specified circumstances, the Court also is authorized to order the forfeiture of substitute property. Notably absent from the applicable statutory framework, however, is a provision expressly authorizing money judgments. Implicitly acknowledging the lack of support for its position in the statutory language, the government instead argues that the practice of entering forfeiture money judgments is established in the case law as a unique aspect of in personam criminal forfeiture. For the reasons set forth below, the Court disagrees.

To begin with, the Court finds no such authority emanating from the inherent nature of criminal forfeitures. Arguing otherwise, the government emphasizes the distinction between civil and criminal forfeitures. Civil forfeiture proceedings, it points out, operate in rem directly against specific property, while criminal forfeitures are in personam and "consequently [are] not limited by any requirement that the government trace the forfeited property to the underlying offense." Gov't Opp'n at 10 (emphasis added). The cases in which courts have so held, and on which the government relies, however, involve interpretation of the RICO forfeiture provision. See, e.g., United States v. Ribilotto, 828 F.2d 940, 948-49 (2d Cir. 1987); United States v. Ginsburg, 773 F.2d 798, 801 (7th Cir. 1985) (en banc); United States v. Connor, 752 F.2d 566, 576 (11th Cir. 1985). But while the RICO statute authorizes forfeiture of "interests" generally, see 18 U.S.C. § 1963(a)(1), the forfeiture provision applicable in this case, regarding directly forfeitable property, expressly limits its reach to the forfeiture of property that

16

"constitutes" or is "derived from" proceeds "traceable to" a criminal offense.  See 18 U.S.C.

§ 981(a)(1)(C).  Thus, the reasoning and holdings of the cases cited by the government have no

application here because the RICO statute, unlike Section 981(a)(1)(C), does not require the

government to trace the proceeds to a specific criminal activity.  The government articulates no

other reason – practical or theoretical – why the distinction between in rem civil forfeiture and in

personam criminal forfeiture supplies the Court with authority to enter a money judgment against

Mr. Day, despite the express statutory language.[10]

       The Court also finds unpersuasive the numerous cases on which the government

relies where courts appear to have authorized forfeiture money judgments outside the RICO

context.  See Gov't Opp'n at 10-12 (citing cases); Gov't Mot. at ¶ 6 (citing cases).  None of the

non-RICO cases on which the government relies meaningfully consider the propriety of entering

money judgments, as the defendants in those cases appear not to have challenged the practice.

See, e.g., United States v. Cherry, 330 F.3d 658, 668-69 (4th Cir. 2003); United States v. Descent,

292 F.3d 703, 706 (11th Cir. 2002); United States v. Baker, 227 F.3d 955, 970 (7th Cir. 2000);

United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999); United States v. Henry, 850 F.

Supp. 681, 683 (M.D. Tenn. 1994); Gov't Opp'n at 11 ("[I]t is not unusual for courts to uphold

---

[10]    It bears repeating in this regard that the government is proceeding – by operation of 28 U.S.C. § 2461(c) – under the civil forfeiture statute, 18 U.S.C. § 981.  Accordingly, the Court's authority to order forfeiture in this case is limited to the defendant's "property" that is subject to forfeiture under Section 981.  See 28 U.S.C. § 2461(c).  As the government correctly recognizes, because civil forfeiture proceedings "are against specific property in rem," Gov't Opp'n, at 10, money judgments are unavailable in the civil forfeiture context, which includes forfeiture proceedings under Section 981.  In other words, a money judgment does not constitute "property" that is subject to forfeiture under Section 981.  The government offers no justification for construing the statute more broadly as it applies to criminal cases by operation of 28 U.S.C. § 2461(c).

money judgments without analysis.").  For example, in <u>United States v. Candelaria-Silva</u>, the

First Circuit broadly states, without offering any authority or analysis, that "the government is

entitled to an <u>in personam</u> judgment against the defendant for the amount of money the defendant

obtained as proceeds of the [money laundering] offense."  166 F.3d at 42.  As the court

subsequently notes, however, the defendant did not challenge the money judgment.  <u>See id</u>. at 44.

Thus, the question of whether the district court had the power to enter a forfeiture money

judgment was not before the court of appeals.  Indeed, none of the cases cited by the government

<u>hold</u> that imposing a forfeiture money judgment is proper.[11]

        The one court that squarely has analyzed the issue outside of the RICO context

has held that courts lack the authority to enter forfeiture money judgments.  <u>See United States v.

Croce</u>, 334 F. Supp. 2d 781, 794 (E.D. Pa. 2004) ("<u>Croce I</u>") (holding that court lacked authority

to enter forfeiture money judgments against money launderers pursuant to Section 982); <u>Croce II</u>,

345 F. Supp. 2d at 497 (reaffirming the "fundamental soundness of [its] original opinion").[12]

Focusing on the statutory term "forfeit," the court in <u>Croce I</u> exhaustively analyzes lay and legal

---

        [11]      The government's reliance on <u>United States v. Voigt</u>, 89 F.3d 1050 (3d Cir.
1996), is misplaced.  Although the court in <u>Voigt</u> discusses the government's "entitlement" to
$1.6 million in forfeiture because the defendant therein had been convicted of committing $1.6
million in money laundering offenses, <u>see id</u>. at 1084-85, 1085 n.19, 1088, it never holds that the
district court was authorized to enter a forfeiture money judgment against the defendant for that
amount.  The focus of the court's inquiry instead is whether the district court had properly
ordered the forfeiture of specific property, namely two pieces of jewelry.

        [12]      The court in <u>Croce I</u> and <u>Croce II</u> was construing a provision of the criminal
forfeiture statute, which – in terms similar to the applicable forfeiture provision in this case –
required the court to order the defendant, who had been convicted of money laundering, to
"forfeit to the United States any property, real or personal, involved in such offense, or any
property traceable to such property." <u>Croce I</u>, 334 F. Supp. 2d at 784 (quoting 18 U.S.C. §
982(a)(1)).

definitions of the word, the history of forfeiture in Anglo-American law, appellate decisions construing forfeiture statutes, and the structure of penalties in the federal criminal code.  And after rejecting the precise arguments the government has made in this case, the court concludes that, by using the term "forfeit," Congress simply could not have intended forfeiture statutes to authorize the entry of money judgments, which are neither directed at specific items of property nor limited by the assets that a convicted person possesses at any particular time.  See Croce I, 334 F. Supp. 2d at 794 ("[O]ne cannot forfeit something that he does not possess.").

There also is no merit to the government's position that, in this case, "entry of an order of forfeiture in the form of a personal money judgment is specifically authorized by Rule 32.2(b)(1) and (c)(1) of the Federal Rules of Criminal Procedure."  Gov't Mot. at ¶ 6 (emphasis added); see also Gov't Opp'n at 11.  To be sure, Rule 32.2 includes procedures to be followed when the government seeks forfeiture money judgments "under the applicable statute," Fed. R. Crim. P. 32.2(b)(1), or "as prescribed by statute," Fed. R. Crim. P. 32.2(c)(1).  But that does not answer the threshold question of whether and in what circumstances the Court is statutorily authorized to enter a personal money judgment.  As at least one court has recognized, the Rules writers clearly understood that they were articulating procedures to be applied in situations where a statute already authorized forfeitures and that the Rule was not intended to provide any independent authority:

> Recently adopted Federal Rule of Criminal Procedure 32.2 recognizes that courts have entered forfeiture money judgments. Though the Advisory Committee noted that "a number of cases have approved use of money judgment forfeitures," it judiciously took "no position on the correctness of those rulings."  This less-than-enthusiastic discussion of the practice suggests that at least some members of the Committee harbored some doubts about courts'

> power to impose forfeiture money judgments.   Regardless of the
> Committee's views, it lacked the power to propose – and the Supreme
> Court lacked any power to adopt – rules that "abridge, enlarge or
> modify any substantive right."   <u>See</u> 28 U.S.C. § 2072(b) (2004).
> Thus, Rule 32.2's references to forfeiture money judgments could not
> impliedly authorize us to impose them <u>unless a statute also</u>
> <u>empowered us to do so.</u>

<u>Croce I</u>, 334 F. Supp. 2d at 785 n.12 (emphasis added).  Simply stated, Rule 32.2 cannot

authorize a practice not permitted by statute.

For all of the reasons stated herein, the Court concludes that the applicable

forfeiture statutes do not authorize the Court to enter a money judgment against Mr. Day.

### 4. Substitute Property

In addition to seeking entry of a money judgment against Mr. Day, the

government also has moved for entry of a preliminary order of forfeiture permitting the

government to substitute Mr. Day's primary residence for an unspecified portion of the money

judgment. <u>See</u> Gov't Mot. at ¶¶ 9, 10.  As noted, the Court does have the authority to order the

forfeiture of any item of property of Mr. Day's, "up to the value of" his directly forfeitable

property, if it is shown that, by act or omission, he has frustrated the government's ability to

locate or seize his directly forfeitable property.  21 U.S.C. § 853(p).  The Court nevertheless

cannot order Mr. Day to forfeit his residence.  Having concluded that the Court is without

authority to enter a forfeiture money judgment, there simply is no directly forfeitable property

before the Court for which Mr. Day's residence can be substituted.  And even if the Court had the

authority to enter a money judgment for the amount of the proceeds subject to criminal forfeiture

– $39,123.76 – it could not order the forfeiture of Mr. Day's residence as substitute property

"without the government having first provided evidence that the . . . total value [of the residence] does not exceed" $39,123.67.  United States v. Faulk, 340 F. Supp. 2d 1312, 1315 (M.D. Ala. 2004).  Although the Court doubts whether the government could make such a showing, the government's motion fails to provide the Court with any information about the value of the residence or of Mr. Day's efforts to frustrate the government's ability to locate and seize forfeitable property.

      The proceeds of Mr. Day's Section 664 violations and any real or personal property derived from those proceeds remain subject to forfeiture by order of the Court.  If the government again decides to seek an order of forfeiture prior to Mr. Day's sentencing, it must establish, by a preponderance of the evidence, see United States v. DeFries, 129 F.3d at 1312; United States v. Hall, 411 F.3d 651, 654-55 (6th Cir. 2005), the forfeitability of currency or accounts constituting all or a part of the $39,123.67 of forfeitable proceeds, or other specific property of Mr. Day's derived from those proceeds.  See 18 U.S.C. § 981(a)(1)(c).  It may also then seek substitute property in lieu of such proceeds or property if it can meet the requisites of 21 U.S.C. § 853(p).  In light of the Court's conclusions regarding the amount of the proceeds that are subject to criminal forfeiture, however, the Court does not anticipate that the government again will seek the forfeiture of Mr. Day's primary residence as substitute property.

## III. CONCLUSION

      For the foregoing reasons, the Court denies the defendant's motion for judgment of acquittal and denies, without prejudice, the government's motion for entry of a money judgment and preliminary order of forfeiture.  Because of the significance of this decision, the

Court recognizes that the government may need time to consider whether to appeal this decision

(if it is an appealable order) or to seek an order of mandamus.  The government also must

consider whether, under Rule 32 of the Federal Rules of Criminal Procedure or other authority, it

is appropriate to proceed promptly to a sentencing in this case, to make some other request of this

Court, or to await a decision by the court of appeals.

A separate Order accompanies this Opinion.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  February 22, 2006